UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| DEFENDERS OF WILDLIFE, SIERRA CLUB, STATEWIDE ORGANIZING FOR COMMUNITY EMPOWERMENT, AND TENNESSEE CLEAN WATER NETWORK, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 2:13-00039 ) Judge Sharp ) |
| SALLY JEWELL, Secretary, U.S. Department of the Interior; DAN ASHE, Director, U.S. Fish and Wildlife Service; U.S. FISH AND WILDLIFE SERVICE; JOSEPH PIZARCHICK, Director, U.S. Office of Surface Mining, Reclamation, and Enforcement; U.S. OFFICE OF SURFACE MINING, RECLAMATION, AND ENFORCEMENT, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM

This litigation was spawned when a federal agency issued permits to two coal mines allegedly without proper consideration of how wastewater discharges from the mines would impact the blackside dace and the Cumberland darter, two species of fish protected by the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.* Defendants now move to transfer this case under 28 U.S.C. § 1404(a) to the Eastern District of Tennessee, where both the mines and the waters in which the fish swim are located. Plaintiffs oppose that motion.

## I. BACKGROUND

Plaintiffs are non-profit membership organizations, whose mission, in whole or in part, is

1

to protect the environment. They bring this action on behalf of their organizations, as well as on behalf of their "members who live, work, own property, and/or recreate in and near the Zeb Mountain and Davis Creek Mine Area 5 surface coal mines and the watersheds affected by wastewater discharges from these mines." (Docket No. 37, Am. Comp. ¶ 12). Those mines are located in Scott and Campbell counties, Tennessee, both of which are in the Eastern District.

Defendants include the United States Fish and Wildlife Service ("FSW") which is charged with administration of the ESA and "is the consulting agency when federal actions may affect listed terrestrial or freshwater species and those species' designated critical habitat." (Id. ¶ 14). It maintains an Ecological Services Field Office for the State of Tennessee, in Cookeville, which is in this judicial district.

From its office in Cookeville, the FSW administers the ESA in Tennessee, including formal and informal consultation on the issuance of permits for surface mining by the Office of Surface Mining, Reclamation, and Enforcement ("OSM"), another Defendant in this action.[1] The OSM is charged with administering the Surface Mining, Reclamation, and Control Act of 1977 ("SMRCA"), 20 U.S.C. § 1201 *et seq*., and it does so for surface coal mines in Tennessee from its Knoxville field office, which is in the Eastern District and from where the permits for the Zeb Mountain and Davis Creek mines were issued.

As between the two, FSW is said to be the "wildlife" or "consulting" agency responsible for administering the ESA, while OSM is said to be the "action" agency, responsible for insuring against jeopardizing listed species when issuing SMRCA permits. Though they have separate

---

[1] The remaining two Defendants are Joseph Pizarchik, the Director of the OSM, and Sally Jewell, the Secretary of the Department of the Interior.

2

Case 3:13-cv-00698-PLR-CCS   Document 57   Filed 11/26/13   Page 2 of 11   PageID #: 384

responsibilities, both agencies are alleged to have failed to meet their obligations under the ESA to the protect blackside dace and Cumberland darter from the deleterious effects of surface coal mining wastewater discharges.

Specifically, OSM is alleged to have violated the ESA by issuing the SMRCA permits for the Zeb Mountain and Davis Creek mines, by issuing blackside dace conservation guidelines, by failing to reinitiate consultation with the FSW based on new information, and by arbitrarily relying on a 1996 Biological Opinion to excuse its failure to consult with the FWS. FWS has allegedly violated the ESA by failing to request OSM to reinitiate and complete consultation on the two permits, on the 1996 Biological Opinion, and on the blackside dace conservation guidelines, and allegedly has not met its obligation to develop conservation guidelines for the Cumberland darter. Such omissions have permitted both agencies to ignore mounting evidence that high conductivity[2] wastewater from surface coal mines harms both species of fish, with the fear being that the Cumberland darter and the blackside dace, a minnow, would be lost.

The Amended Complaint is in eight counts. Among other things, Plaintiffs request an order vacating the two SMCRA permits at issue, vacating the 1996 Biological Opinion and associated "incidental take statement"[3] for OSM's Tennessee mining program until OSM has "reinitiated and completed" formal consultation on the effects of its mining programs on protected species, requiring Defendants to "consult" under the ESA over the 2009 Guidelines developed to protect blackside

---

[2] "Conductivity" is a method for determining dissolved solids in liquids. It is typically expressed in microSiemens per centimeter (or µS/cm), which measure the capacity of water to carry an electrical charge.

[3] Generally, "incidental take" permits under Section 10(a) of the ESA, 16 U.S.C. 1539(a), are required in order to engage in activities that may result in the "take" of threatened or endangered species. "'Incidental Take Statements set forth a 'trigger' that, when reached, results in an unacceptable level of incidental take . . . requiring the parties to re-initiate consultation.'" Wild Fish Conservancy v. Salazar, 628 F.3d 413, 531 (9th Cir. 2010) (citation omitted).

dace before issuing any new SMCRA permits in Tennessee, and requiring development of guidelines to minimize the incidental take of the Cumberland darter and consultation on existing blackside dace guidelines. (Id. at 27-29, ¶¶ A-G).

**II.**

Defendants begin by arguing that this Court's connection to the controversy is "attenuated," and "minimal when compared to the Eastern District." (Docket No. 23-1 at 9). They also discuss the applicable venue statutes and raise assorted arguments as to whether the connection to this district is substantial enough, and whether the FSW can be said to "reside" in this district. Inasmuch as the Motion to Transfer is premised exclusively on Section 1404(a), the Court does not understand Defendants to actually be challenging whether venue in this district is proper (even though the parties spend a not insignificant amount of time addressing the issue), but to the extent that they do, this Court disagrees.

Section 1404(a) "'operates on the premise that the plaintiff has properly exercised his venue privilege.'" Kerobo v. SouthWestern Clean Fuels, Corp., 285 F.3d 531, 539 (6th Cir. 2002) (citation omitted). It is unlike Section 1406 which addresses cases "laying venue in the wrong division or district," 28 U.S.C. § 1406 (a), because it "presuppose[s] that the court has jurisdiction and that the case has been brought in the correct forum." Lafferty v. St. Riel, 495 F.3d 72, 77 (3rd Cir. 2007).

Civil actions against federal officers and agencies may be brought in "any judicial district in which (A) a defendant in the action resides, or (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). This general venue provision is supplemented by the ESA which allows citizen suits

4

to be filed "in the judicial district in which the violation occurs." 16 U.S.C. § 1540(g)(3)(A).

The parties differ as to whether the FWS can be said to "reside" in this district. Defendants cite cases like <u>Reuben H. Donnelly Corp. v. FTC</u>, 580 F.2d 264 (7th Cir. 1978), which held that the "residence" of the Federal Trade Commission was in Washington, D.C. even though it maintains regional offices, and like <u>Buckley v. United States</u>, 2013 WL 2242995 (E.D. Tenn. May 21, 2013), which (relying heavily on <u>Donnelly</u>) held that venue in a suit against the United States was not proper in a particular district simply because the United States Attorney had offices in that district. For their part, Plaintiffs claim that those cases, and the others cited by Defendants, simply stand for the proposition that venue under Section 1391(e)(1)(A) does not lie merely because a federal agency has an office in a judicial district; instead, there must be some connection between that office's action and the facts or legal claims that form the basis of the suit.

The Court need not wade into these waters since it is clear that venue is proper within the meaning of Section 1391(e)(B). This is because a substantial part of the events or omissions alleged in the Amended Complaint occurred at the FSW office in Cookeville.

In determining whether a substantial part of the events occurred in a particular district, a court looks "not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim." <u>Astro-Med, Inc. v. Nikon Kohden Amer., Inc.</u>, 581 F.3d 1, 12 (1st Cir. 2009) (citing, <u>First Mish. Corp. v. Bramlet</u>, 141 F.3d 260, 263-64 (6th Cir. 1998) (applying identical provision in Section 1391(b)(2)). In doing so, the focus is not on the actions of one party, but rather, a "holistic view of the acts underlying a claim." <u>Id</u>. Moreover, venue can be proper, even though another district may have a greater connection to the dispute. See, <u>Adams v. Fed. Bur. of Prisons</u>, 716 F. Supp.2d 107, 113 (D. Mass. 2010); <u>Aland v. Kempthorne</u>, 2007 WL 4365340 (N.D.

5

Ill. 2007).

Here, the "triggering event" may be said to have been the issuance of the permits by the OSM in Knoxville which allowed the mines to operate, which, in turn, allowed wastewater with allegedly high conductivity to pollute the surrounding waterways, which, in turn, allegedly negatively impacted the aquatic habitat of the blackside dace and Cumberland darter, and which, in turn threatens their demise. But Plaintiffs' claims are broader than that, and consist of alleged omissions and commissions by the FWS and the OSM, the merit of which is not now before the Court.

Plaintiffs allege that FWS's Ecological Services Office in Cookeville is the only such office in Tennessee, and is generally responsible for all ESA activities, including administering the consultation requirements of the ESA, drafting regulations to list and delist species under the FWS, implement recovery activities for listed species, and issuing permits for incident take of listed species. Further, with respect to the two species at issue, it is alleged the FSW played a key role in the preparation of a review of the blackside dace, a key role in the development of final rules relating to the Cumberland dater and its critical habitat, and the official administrative record relating to those decisions is said to be in the Cookeville office. Moreover, Plaintiffs claim that the Cookeville office of the FWS "is the hub for research" on the deleterious effects of high conductivity coal mining wastewater on th blackside dace and Cumberland darter. These allegations establish a substantial enough connection so as to make venue proper in this district. See, Oceana, Inc. v. Pritzker, 2013 WL 5801755 at *2 (D.D.C. Oct. 28, 2013) (venue in District of Massachusetts was proper under Section 1391(e)(1) where federal officials involved in writing and promulgating rules were located in Gloucester, Massachusetts); Aftab v. Gonzalez, 597 F. Supp.2d 76, 80-81 (D.D.C.

2009) (venue in the Northern District of Texas was proper under 28 U.S.C. § 1391(e)(2) against the Citizenship and Immigration Services where the Texas service center oversaw the plaintiff's application for adjustment and took actions in processing the application).

The fact that venue is proper in this district, of course, does not end the inquiry because venue may be proper in more than one district, and so the Court turns to Defendants request for a transfer.

### III.

Section 1404(a) provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).[4] A decision on whether to transfer lies within the broad discretion of the trial court. Reese v. CNH Amer., LLC, 574 F.3d 315, 320 (6th Cir. 2009); Bunting ex rel. Gray v. Gray, 2 Fed. Appx. 443, 448 (6th Cir. 2001).

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). "[I]n ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric 'interest of justice.'" Moore v. Rohm & Haas Co., 446 F.3d 643, 647 (6th Cir. 2006) (citation omitted).

The private interests include (1) the location of willing and unwilling witnesses; (2) the

---

[4] For obvious reasons, it is undisputed that this case could have been brought in the Eastern District of Tennessee.

7

residence of the parties; (3) the location of sources of proof; (4) the location of the events that gave rise to the dispute; (5) systemic integrity and fairness; and (6) the plaintiff's choice of forum. Id.; Kerobo v. Southwestern Clean Fuels, Corp., 285 F.3d 531, 537 (6th Cir. 2002). The public interests include, but are not limited to, "(1) the desire to avoid multiplicity of litigation as a result of a single transaction or event; (2) the local interest in deciding local controversies at home; and (3) the relative familiarity of both venues and the governing laws." Wildearth Guardians v. United States, 922 F. Supp. 2d 51, 54 (D.D.C. 2013) (collecting cases); see, Smith v. Kyphon, Inc., 578 F. Supp. 2d 954, 962 (M.D. Tenn. 2008) (listing similar public and private interest factors).

The burden is on a defendant to establish that a transfer is warranted, and "unless the balance of these factors weighs strongly in favor of the defendant seeking transfer, the plaintiff's choice of forum should rarely be disturbed." Anderson v. TOL, Inc., 927 F. Supp.2d 475, 484 (M.D. Tenn. 2013). Defendants have met that burden in this case.

**A.**

Turning first to the private interests factors, a plaintiff's choice of forum is generally given "great weight," or accorded "substantial deference," but "[w]hen a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference." In re Link A Media Corp., 662 F.3d 1221, 1223 (Fed. Cir. 2011); see, Emp. Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1168 (10th Cir. 2010) ("The plaintiff's choice of forum receives less deference, however, if the plaintiff does not reside in the district"). In fact, where the chosen forum is not the home of the plaintiff, "the normally applicable assumption that the forum choice is convenient" may carry "significantly less weight." Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V., 629 F.3d 520, 524 (6th Cir. 2010) (so stating under doctrine of *forum non conviens*).

8

Here, none of the Plaintiff organizations reside in this district. As such, the Court gives less weight to this factor than it normally would, particularly since one of the organizations resides in Knoxville, which is in the Eastern District. See, Ryan v. Tseperkas, 2008 WL 268716 at *3 (E.D.N.Y. Jan. 28, 2008) ("Where, as here, however, Plaintiff resides not in the transferror forum, but in the forum where the matter is sought to be transferred, his choice of forum is entitled to significantly less weight").

As for the remaining private interests, Defendants claim those factors are neutral or entitled to little weight because this is an ESA case, and such cases are generally determined based upon the administrative record. There is plenty of authority for this position. See, Ctr. for Biological Diversity v. Export-Import Bank, 2013 WL 5273088 at *4 (N.D. Cal. Sept. 17 2013) (in environmental case, convenience of the witnesses and ease of access to sources of proof factors were neutral because case was to be decided on the administrative record); Pueblo v. Nat'l Indian Gaming Comm., 731 F. Supp.2d 36, 40 (D.D.C. 2010) ("Since this is an APA case, neither the convenience of the parties and witnesses nor the ease of access to sources of proof weighs heavily in the analysis").

For their part, Plaintiffs dispute Defendants' assertion that this case will be limited to the administrative record because Plaintiffs challenge not only the final agency actions, but also alleged failures to act. Yet, even if resolution of the case requires going beyond the administrative record, the remaining private interest factors are, at best, neutral because documents and witnesses will presumably come from both the Cookeville office of the FSW, and the Knoxville office of the OSM. In fact, depending upon how far beyond the administrative record the case goes, the convenience of the witnesses and sources of document factors may actually tip in favor of a transfer because the

9

Tennessee Clean Water Network is located in Knoxville, and the Plaintiff organizations are said to represent individuals who have been impacted by the runoffs from the mines, the majority of whom, presumably, are in the Eastern District.

**B.**

The relevant public interest factors weigh heavily in favor of transfer and, in particular, the principle that local controversies should be decided at home.

"'In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home.'" Pueblo, 731 F. Supp. 2d at 41 (quoting, Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947)). "'This rationale applies to controversies . . . requiring judicial review of an administrative decision,'" id. (quoting, Sierra Club v. Flowers, 276 F.Supp.2d 62, 70 (D.D.C. 2003), and "[c]ourts have observed that environmental cases often provide a particularly strong basis for finding a localized interest in the region touched by the challenged action." Sierra Club v. U.S. Dept. of State, 2009 WL 3112105 at *3 (N. D. Cal. 2009) (collecting cases).

There is a significant local interest in having this controversy decided in the Eastern District. It is there where the permits were issued. It is there that the Zeb Mountain and Davis Creek mines are located. It is there where a vacation of the permits would have the most impact. It is there where the mines allegedly produced substances which lead to high conductivity in the wastewater. It is there where the Blackside dace and Cumberland darter are allegedly being threatened by that run-off. It is there where Plaintiff Tennessee Clean Water Network is located. And it is there where "members who live, work, own property, and/or recreate in and near the Zeb Mountain and Davis

10

Creek Mine Area 5 surface coal mines and the watersheds" notice the effect of the "wastewater discharges from these mines." (Docket No. 37, Am. Comp. ¶ 12).[5]

Additionally, while "all federal courts are presumed to be equally familiar with the law governing federal statutory claims," Miller v. Insulation Contractors, Inc., 608 F.Supp.2d 97, 103 (D.D.C. 2009), it is not insignificant that Plaintiff Sierra Club and Plaintiff Tennessee Clean Water Network have previously brought litigation in the Eastern District regarding OSM's permitting for the Zeb Mountain mine. See, Tennessee Clean Water Network v. Kempthorne, 2007 WL 2220414 (E.D. Tenn. July 27, 2007): Save our Cumberland Mountains v. Norton, 297 F. Supp.2d 1042 (E.D. Tenn. 2003)(internal citation omitted)). While Plaintiffs assert that those cases are distinguishable because there would have been no basis for venue in the Middle District, the point remains that the Eastern District of Tennessee presumably has at least some institutional knowledge about the Zeb Mine and OSM permitting relating thereto.

## IV.

On the basis of the foregoing, the Court will enter an Order transferring this action to the Eastern District of Tennessee.

*Kevin H. Sharp*
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

---

[5] The Court rejects Plaintiffs' argument that, because the Cookeville and Knoxville courthouses are separated by a drive of only an hour and a half, and that because, "the blackside dace and Cumberland darter are part of Tennessee's natural heritage of biodiversity, (Docket No. 39 at 16), this makes the case a "local" controversy in the Middle District. Defendants' claim, and Plaintiffs do not appear to dispute, that "the dace and darter are not found in the Middle of District of Tennessee." (Docket No. 23-1 at 12). Plaintiffs certainly do not claim that the run-off from the two mines in Scott and Campbell counties are greatly affecting those species in this district.